UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| DANIEL WAYNE SIZEMORE, | ) | |
|---|---|---|
| | ) | Civ. No: 5:15-CV-232-GFVT |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| CAROLYN W. COLVIN, Acting | ) | **ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Daniel Wayne Sizemore seeks judicial review of the Commissioner of Social Security's decision to deny his application for Disability Insurance Benefits and Supplemental Security Income. For the reasons explained below, the Court will DENY Sizemore's Motion for Summary Judgment [R. 11] and GRANT the Commissioner's [R. 12].

I

Daniel Sizemore filed an application for Disability Insurance Benefits ("DIB") with the Social Security Administration ("SSA") in August 2012, and later filed a second application for Supplemental Security Income ("SSI") in August 2013. [Tr. 181-187, 291-297.] The SSA denied both applications initially and upon reconsideration. [Tr. 18.] Sizemore then requested a hearing with an Administrative Law Judge ("ALJ"), which the parties held on January 4, 2014. [*Id*.] On February 28, 2014, ALJ Greg Holsclaw held that Sizemore was not disabled because "there are jobs that exist in significant numbers in the national economy that the claimant can perform." [Tr. 27-28.]

In evaluating Sizemore's disability claim, the ALJ conducted the standard sequential analysis required under 20 C.F.R. § 416.920[1]. This evaluation includes five steps. First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments that significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." 20 C.F.R. §404.1520(d). Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which is an assessment of one's ability to perform certain physical and mental work activities on a sustained basis despite any impairment. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545. Fourth, the ALJ must determine whether the clamant has the RFC to perform the requirements of his past relevant work; if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments—considering his RFC, age, education, and past work—prevent him from doing other work that exists in the national economy, then he is "disabled." § 404.1520(f).

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

At Step 1, the ALJ found that Sizemore had "not engaged in substantial gainful activity since his amended onset date of January 15, 2012." [Tr. 20.] At Step 2, the ALJ determined that Sizemore suffers from the following severe impairments: "back pain; right shoulder and right carpal tunnel syndrome; myofascial pain/possible fibromyalgia/tendonitis; anxiety and depression; status post concussive syndrome; and alcohol abuse and marijuana abuse." [*Id*.] At Step 3, however, he found that Sizemore does "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." [Tr. 21.] After considering the entire record, the ALJ then determined that "the claimant has the residual functional capacity to perform less than a full range of sedentary work" with the "following exertional and non-exertional limitations":

> No lifting/carrying more than 10 pounds occasionally; no standing/walking more than two hours out of an eight-hour day and for no more than one hour at one time; no sitting more than six hours out of an eight-hour day and for no more than one hour at one time; can do frequent pushing/pulling up to the exertional limitations, no more than occasional pushing/pulling with the left lower extremity such as operation of foot pedals; no more than occasional overhead reaching bilaterally; no more than frequent fine fingering or gross manipulation bilaterally; no more than occasional balancing, stooping or climbing ramps or stairs, but no kneeling, crouching, crawling or climbing ladders, ropes or scaffolds; must avoid concentrated exposure to full-body vibration; no work around environmental hazards such as dangerous, moving machinery or unprotected heights; simple routine work; no more than occasional interaction with co-workers or supervisors or the general public; no more than occasional changes in the work setting."

[Tr. 22.] Given these limitations, the ALJ concluded that Sizemore was "unable to perform any past relevant work." [Tr. 26.] At Step 5, the burden shifted to the Commissioner to identify a significant number of jobs in the national economy that Sizemore could perform, given his RFC, age, education, and experience. *Jones*, 336 F.3d at 474; 20 C.F.R. § 404.1520(g); 20 C.F.R § 404.1560(c). Relying principally on the evidence of Sizemore's RFC and a vocational expert's

("VE") testimony, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." [Tr. 27.] He thus found that Sizemore was not disabled. [Tr. 28.] The Appeals Council declined to review the ALJ's decision in June 2015 [Tr. 1-6], and this appeal followed.

II

A

This Court must limit its review to the question of whether substantial evidence in the record supports the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). To find "substantial evidence," courts must perceive "more than a scintilla of evidence but less than a preponderance," which is to say that a court need only find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (internal quotations and citation omitted).

When searching the record for this evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). This examination, however, is limited "to the particular points that [the claimant] appears to raise in her brief on appeal." *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). Courts are not empowered to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*,

862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Court finds substantial evidence to support the ALJ's judgment, it must affirm that decision even if the Court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Ulman, 693 F.3d at 714*; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

**B**

**i**

Sizemore challenges the ALJ's decision on two grounds. First, he argues that the ALJ's evaluation of his RFC was "not supported by substantial evidence." [R. 11-1 at 6.] He begins by disputing the ALJ's finding that an MRI revealed "no nerve root compression" in his spine. [*Id.* at 2.] The ALJ's basis for this conclusion was plain: the doctor who examined Sizemore's MRI stated unequivocally that he had "no nerve root compression" in his spine. [Tr. 388.] But Sizemore's counsel has apparently conducted his own internet research about "nerve root compression," and now believes the doctor's conclusion was erroneous. He cites two MRIs, including the test considered by the doctor above,[2] that indicate Sizemore has a "small . . . disc protrusion which contacts the . . . right L5 nerve root." [Tr. 362.] And he then provides a link to a webpage—which, needless to say, is not a part of the administrative record—that purportedly

---

[2] Sizemore also cites the results of a third MRI performed in March 2014. [R. 11-1 at 3.] Although he submitted this evaluation to the Appeals Council, it was not in the record before the ALJ. Whenever "the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Comm'r of Social Security,* 96 F.3d 146, 148 (6th Cir. 1996). But the Court can "remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Id.* Evidence is material "only if there is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 839 (6th Cir. 2016) (internal quotations and citation omitted). Here, Sizemore does not even attempt to argue that the evidence in this new evaluation is "material." The Court's own review of the report—which observes some "degenerative changes" but also disc protrusion that has "decreased in size slightly from the prior study" [Tr. 422]—shows that the test did not provide any "new and material" evidence warranting remand.

5

indicates "'contact' and 'compression' are the same in this context." [R. 11-1 at 2.] This webpage does not discuss the relationship between "contact" and "compression" at all; but more importantly, it is not the prerogative of the parties or this Court to dispute the conclusions of medical experts by resorting to our own unwieldy, post hoc internet research. The Court must limit its review to the evidence in the record. *See* 42 U.S.C. § 405(g). And that record includes the explicit conclusion of a reviewing physician that Sizemore had "no nerve root compression" in his spine. [Tr. 388.]

Sizemore next challenges the ALJ's reference to his "normal neurological examination in March of 2013 (Exhibit 9F/10)." [Tr. 25.] He argues that this finding does not "hold up" because he "has not found any record of a 'normal neurological examination in March of 2013 (Exhibit 9F/10).'" [R. 11-1 at 7.] A review of the ALJ's order suggests that his allusion to "March of 2013 (Exhibit 9F/10)" was likely a typographical error. He first references "Exhibit 9F/9," which does refer to March 2013, and then immediately cites "Exhibit 9F/10," which includes an examination from June 2013. [Tr. 25.] This "routine follow-up" acknowledges Sizemore's "low back and right leg pain," but otherwise indicates that he is a "pleasant patient" whose "[s]ymptoms are improving."

It is also possible that the ALJ intended to refer to "Exhibit 8F/10" rather than "9F/10." Exhibit 8F/10 does describe an examination of Sizemore's MRI from March 2013. In that report, the reviewing physician noted that Sizemore had "mild degenerative disc disease," but otherwise repeatedly found that Sizemore's spinal condition was within the "normal" range and revealed "no significant spinal canal or neural foraminal stenosis." [Tr. 366-67.] And in any case, the question before the Court is not whether the ALJ cited the wrong page number; the question is whether substantial evidence supported his determination. *See, e.g., Despins v. Comm'r of Soc. Sec.,* 257

F. App'x 923, 931 (6th Cir. 2007) (rejecting claim that remand was necessary to correct ALJ's "factual errors" because the "ALJ would have arrived at the same disability determinations regardless of any" such errors); *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.").

Lastly, Sizemore claims that the ALJ failed to consider the "*objective* findings of [his] physicians," and performed only a "*subjective* analysis of whether [his] mostly sporadic activities such as shopping were consistent with his disability." [*Id.* at 8] (emphasis in original). Not true. The ALJ plainly based his decision on both (1) the serious questions surrounding Sizemore's credibility and (2) the objective reports of multiple physicians. He gave "intermediate weight" to the examination of Dr. Owen, who noted that Sizemore's "strength, sensation and coordination [were] all within normal limits except for some mild diminishing of vibratory sense on his right first toe," that he had "moderate to severe difficulty" lifting objects, and that his "hearing, seeing, speaking, and traveling [were] minimally affected." [Tr. 332.] He also afforded "intermediate weight" to the evaluation of Dr. Jack Reed, who determined that, "based on overall medical evidence," Sizemore could perform "light exertional work." [Tr. 26.] Dr. Reed likewise concluded that Sizemore's alleged "limitations with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and using hands" were only "partially credible."[3] [Tr.

---

[3] Sizemore claims that Dr. Reed's opinion was "bizarre" because it (1) mistakenly suggested that Sizemore's pain was on his left side and (2) used the female pronoun at one point. [R. 11-1 at 6.] On this basis, he believes Dr. Reed's opinion "should have been discarded in its entirety." [*Id.*] The transcript does show that Dr. Reed referred to Sizemore's pain in his "left" extremity, when he otherwise claimed that his pain was on his right side. And Dr. Reed did use the female pronoun in one paragraph, although the rest of the opinion uses the male pronoun. [Tr. 116, 118.] Even the same paragraph that contains the female pronoun reverts back to the male pronoun two sentences later. [Tr. 118.] The rest of the fourteen-page report accurately describes Sizemore's condition and medical records. These minor errors are facially insufficient to warrant "discard[ing]" Dr. Reed's opinion "in its entirety."

7

118.] And the ALJ also cited Sizemore's examination from August 2013, which identified "a small herniated disc at T7-8, but no significant spinal canal or neural foraminal stenosis." [Tr. 368.] This evidence, combined with the other medical records discussed above, included substantial "objective findings" to support the ALJ's decision.

The ALJ also relied upon considerable evidence that Sizemore had misrepresented the severity of his impairments. Dr. Mark Etscheidt, Sizemore's treating psychologist, reported that he exhibited "significant" signs of malingering, and noted that "[h]is pain may serve to help him obtain disability benefits and . . . likely explains away some interpersonal difficulties that he may [have] been experiencing." [Tr. 414-15.] He also recognized that Sizemore had "an unusual degree of concern about symptomatic problems that is unusual even in clinical samples," and expressed "a ruminative preoccupation with [his] physical functioning." [Tr. 414.] The ALJ relatedly noted that Sizemore "lives in a town home with a roommate, attends to his personal hygiene without assistance, watches television, talks to friend[s] on the phone, sits on the front porch, does his laundry, picks up food from restaurants, rides his motorcycle,[4] drives a car, shops in stores for personal items, pays bills using a checkbook/money orders, uses the internet, fishes, and visits with friends once a week." [Tr. 25.] This evidence was certainly relevant to the credibility of Sizemore's claims. *See, e.g., Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (holding that an ALJ "justifiably considered [the petitioner's] ability to conduct daily life activities in the face of his claim of disabling pain.").

All of this evidence is consistent with the ALJ's determination that Sizemore could perform a very limited range of sedentary work, including lifting "no more than 10 pounds occasionally," standing or walking "no more than two hours out of an eight-hour day and for no more than one

---

[4] Sizemore did tell his psychologist that he had not been on his motorcycle recently, and that he injured his back the last time he rode it. [Tr. 412.]

hour at a time," and performing "no more than occasional balancing, stopping or climbing ramps or stairs; but [with] no kneeling, crouching, crawling or climbing ladders, ropes or scaffolds." [Tr. 22.] The ALJ even took these findings a step further than the evaluation of Dr. Reed, who concluded that Sizemore could lift as much as "20 pounds" and stand or walk for "4 hours" a day. [Tr. 115-16.] Faced with these reasonable findings, the ALJ's vocational expert testified that Sizemore "would be able to perform the requirements of representative occupations at sedentary exertion, such as Machine Tender," for which there are "776 jobs" in Kentucky alone and "41,000 [jobs] nationwide." [Tr. 27.] The Court thus finds substantial evidence in the record to support the ALJ's decision.

### ii

Sizemore's second argument is that the ALJ should have ordered a consultative examination to explore his "serious psychological conditions." [R. 11-1 at 8.] He points to Dr. Etscheidt's report that he has symptoms of "severe" depression that are "unusual even in clinical samples," that he has a "high level of anxiety and tension," and that he has a "ruminative preoccupation with [his] physical functioning."[5] [Tr. 414.] ALJs have "discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001). And the simple fact that evidence in the record raises a concern about the claimant's mental health is not enough to warrant further investigation; instead, additional consultation is only required if the existing "medical sources cannot or will not give [the ALJ] sufficient medical evidence about [the claimant's] impairment for [the ALJ] to determine whether [he is] disabled." 20 C.F.R. § 404.1517; *see also see Landsaw v. Sec'y of Health & Human*

---

[5] Sizemore also cites the psychologist's reference to his "recurrent thoughts of suicide," without clarifying that he had denied "any current suicidal ideation" or any "ideation in the past 6 months." [Tr. 412.]

9

*Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination.").

Here, Sizemore argues that the ALJ "essentially ignored these mental health issues in his decision, and he did not rule on Mr. Sizemore's very reasonable motion for a consultative examination to evaluate his mental status." [R. 11-1 at 8.] That is not what happened. The record shows that, at his hearing with the ALJ, Sizemore's counsel stated a desire to "leave the record open" so that Sizemore could receive an additional "diagnostic injection." [Tr. 37.] The ALJ expressed a concern about doing so "if we don't know when it's even going to be scheduled." [*Id.*] Counsel responded, "I was going to suggest that you consider sending him out for a psyche CE because . . . Comp Care [is] treating him for some . . . psychological issues." [*Id.*] He added that, "[i]f you were inclined to send him out for a psyche CE, of course that would certainly get us past whatever time [was] needed for" the injection therapy. [Tr. 38.] The ALJ replied that there were already psychological treatment notes in the record, to which counsel conceded, "Yes, the Comp Care notes are in there judge." [Tr. 39.] The ALJ then stated, "I'm hearing your motions; I'm going to go forward with the hearing today, and if turns out that there is more information that's due from the hearing from this testimony then I'll . . . come back and revisit the issue." [*Id.*] Counsel responded, "That's fine, your honor, will do." [*Id.*]

The "treatment notes" referenced by the ALJ are unusually long, comprehensive, and thoughtful. Dr. Etscheidt carefully charts Sizemore's personal background, discusses his mental health history at great length, thoroughly discusses his present emotional and interpersonal struggles, describes the results of two psychological tests, and provides a detailed assessment of the impact these issues may have had on his social skills and vocational ability. [Tr. 29-35.]

Sizemore makes no attempt to explain why this evaluation was not enough to give the ALJ "sufficient medical evidence about [his] impairment." [*Id.*] Nor can the Court identify any basis for such a conclusion.

The Court adds, too, that the ALJ reasonably relied on this evidence in making a determination about Sizemore's mental and emotional health. The ALJ extensively cited Dr. Etscheidt's report, noting that Sizemore had "depression and anxiety problems [and] status post concussive syndrome," and that these issues were "severe." [Tr. 20, 25.] And he balanced this information against Sizemore's own testimony that he "lives in a townhome with a roommate," speaks to friends on the phone "every day," and goes out with friends "once a week." [*Id.*, Tr. 249.] This evidence was entirely consistent with the ALJ's finding that Sizemore needs "simple, routine work," no more "than occasional interaction with co-workers or supervisors or the general public," and "no more than occasional changes in the work setting." [Tr. 22] The Court easily finds that the record was sufficiently developed to support this conclusion. *See Foster,* 279 F.3d at 356 ("Given that there was already sufficient testimony on [the claimant's] impairments in the record for the ALJ to evaluate [his] mental condition and residual functional capacity, the ALJ did not abuse his discretion in denying [his] requests for additional testing or expert testimony.").

### III

As previously stated, this Court must limit its inquiry to the question of whether the ALJ's decision "is supported by substantial evidence and was made pursuant to proper legal standards." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (citing *Rogers*, 486 F.3d at 241). This is true even if the Court would decide the issue differently, and even if substantial evidence also supports the opposite conclusion. *Ulman,* 693 F.3d at 714; *Bass*, 499

F.3d at 509. In light of the evidence outlined above, the Court finds that substantial evidence supports the ALJ's finding. Accordingly, the Court **HEREBY ORDERS** as follows:

1. Sizemore's Motion for Summary Judgment [**R. 11**] is **DENIED**;

2. The Commissioner's Motion for Summary Judgment [**R. 12**] is **GRANTED**;

3. **JUDGMENT** in favor of the Commissioner will be entered contemporaneously herewith.

This 2nd day of September, 2016.

Gregory F. Van Tatenhove
United States District Judge